CHICAGO HOUSING AUTHORITY, Plaintiff-Appellee, *v.* DORIS DAUGHRITY, Defendant-Appellant.

(Nos. 54356, 54518 cons.;

First District—April 18, 1971.

Gordon H. S. Scott, John Henry Schlegel, and Sherwin Kaplan, all of Chicago, (Donald Hilliker, of counsel,) for appellant.

Kathryn M. Kula, Louis I. Gordon, Calvin H. Hall, and Irvin M. Murrell, all of Chicago, for appellee.

Mr. JUSTICE TRAPP delivered the opinion of the court:

The defendant, a tenant in one of the apartments of the Chicago Public Housing Authority, appeals from a summary judgment of eviction in a forcible detainer suit brought by such plaintiff.

On May 22, 1962, plaintiff, a municipal corporation, and defendant entered into a written lease for month to month rental of an apartment which was a unit of "public housing" known as the Robert Taylor Homes. The lease included the following provision:

"After the original term specified herein (ending midnight, May 31, 1962), this lease shall automatically be renewed for successive terms of one calendar month, until terminated by either party hereto by giving to the other party at least fifteen (15) days written notice of such termination." (Parenthesis ours.).

On February 7, 1967, the United States Department of Housing and Urban Development issued a circular to all federally financed housing authorities, which included the plaintiff, as follows:

"Subject: Termination of Tenancy in Low-Rent Projects

Within the past year increasing dissatisfaction has been expressed with eviction practices in public low-rent housing projects. During that period a number of suits have been filed throughout the United States generally challenging the right of a local authority to evict a tenant without advising him of the reasons for such eviction.

Since this is a federally assisted program, we believe it is essential that no tenant be given notice to vacate without being told by the Local Authority, in a private conference or other appropriate manner, the reasons for the eviction, and given an opportunity to make such reply or explanation as he may wish.

In addition to informing the tenant of the reason(s) for any proposed eviction action, from this date each Local Authority shall maintain a written record of every eviction from its federally assisted public housing. Such records are to be available for review from time to time by HUD representatives and shall contain the following information:

1. Name of tenant and identification of unit occupied.
2. Date of notice to vacate.
3. Specific reason(s) for notice to vacate. For example, if a tenant is being evicted for undesirable actions, the record should detail the actions which resulted in the determination that eviction should be instituted.
4. Date and method of notifying tenant with summary of any conferences with tenant, including names of conference participants.
5. Date and description of final action taken."

On January 7, 1969, Thomas Middleton, Community and Tenant Relations Aide of Robert Taylor Homes, served a notice of termination of the lease on defendant, Doris Daughrity, personally.

Two affidavits were filed in support of the plaintiff's motion for summary judgment. An affidavit of Robert H. Murphy, Manager of Robert Taylor Homes, identified the lease. This was not met by any counter-affidavit. An affidavit by Thomas Middleton aforesaid stated:

"That on December 12, 1968, in the presence of one D. Morrison, also a Community and Tenant Relations Aide, employed by the plaintiff, I notified the defendant, Doris Daughrity, personally, that her lease would be terminated because of repeated anti-social behavior of the defendant's children and lack of parental supervision as called to her attention previously from time to time."

In an affidavit by Doris Daughrity, in opposition to plaintiff's motion, are the following statements:

"3. During the period December 1, 1968 to January 6, 1969, I received no notice regarding termination of my tenancy from the plaintiff or any of his agents. On January 7, 1969, I received formal notice of termination of my tenancy, a copy of which is attached to Plaintiff's motion for summary judgment.

4. Prior to January 7, 1969 I had no personal communication whatsoever with Mr. Thomas Middleton.

5. Prior to receiving the notice of termination of January, 1969, I had been informed by a Mr. Hicks and other employees of the plaintiff, of alleged anti-social behavior on the part of my children. At these times, I repeatedly asked various of plaintiff's agents for an opportunity to respond to these allegations and confront the people who made them, but was always denied the opportunity to do so.

6. Had I been given the opportunity to reply, I would have shown that these alleged incidents involving my son were all caused by the provocation of one of the plaintiff's employees who harbored a personal grudge against my son. This employee was transferred in December, and since that date, there have been no more reported incidents involving my son.

7. Had I been given an opportunity to reply to these charges against me, I could have shown that no cause whatsoever existed for the termination of my tenancy."

From these facts counsel for the respective parties have developed numerous legal issues. Both parties agree that the decision of *Thorpe v. Housing Authority of the City of Durham* (1969), 393 U.S. 268, 279; 89 S.Ct. 518, 527; 21 L.Ed.2d 474, requires a housing authority to apply the Housing and Urban Development Circular.

Defendant from this point contends that the circular and the *Thorpe* decision, particularly as implemented by other decisions in similar fields such as *Goldberg v. Kelly* (1970), 397 U.S. 254; 90 S.Ct. 1001; 25 L.Ed.2d 287, requiring a pretermination evidentiary hearing regarding welfare benefits, and *Escalera v. New York City Housing Authority* (2nd Cir. 1970), 425 F.2d 853 *certiorari* denied (Oct. 4, 1970) 38 Law Week 3149, regarding housing eviction, require complete procedural due process administratively involving detailed charges, fixing a date for hearing sufficiently in advance to allow for preparation, hearing before an impartial hearing officer or board, opportunity to present evidence and to confront witnesses with assistance of counsel prior to institution of eviction proceedings. Finally, counsel for defendant contend that there must be actual cause for eviction.

Counsel for plaintiff take the opposite extreme and deny each of the legal propositions urged. Additionally, counsel cite *Thorpe v. Housing Authority of the City of Durham* (1969), 393 U.S. 268 at 279; 89 S.Ct. 518 at 527 and 21 L.Ed.2d 474 for the proposition that the lease between the authority and the tenant remains inviolate. Without elaborate detail, we think it is fair to say that plaintiff's position is that the HUD circular was intended to give administrative supervision of public authorities by HUD more meaning, and to enable HUD to determine whether arbitrary evictions were becoming general and needed further regulation, but was

not intended to confer "rights" on individual tenants. Plaintiff's counsel set forth as an exhibit to their brief a communication from the Department of Housing and Urban Development stating that the Department had concluded not to ask leave to file a brief as *amicus curiae* in the case of *Chicago Housing Authority v. Stewart*, 43 Ill.2d 96; 251 N.E.2d 185, then on petition for *certiorari* to the Supreme Court of the United States, largely because of the Chicago Housing Authority's "voluntary compliance" with the HUD circular.

Plaintiff's counsel take the position that the lease may, in fact, be terminated without necessity of any cause and quote from the final provisions of the printed lease under "REMEDIES":

"Termination of this lease shall be by either party hereto giving the other party hereto at least fifteen (15) days' written notice of such termination. *The exercise by either party of this power to terminate is unqualified and unrestricted, nor need any reason be given therefor."* (Emphasis supplied).

Plaintiff's counsel also argue that the giving of a reason as required by the HUD circular need not be proved as a condition precedent to eviction, but agree that, if the Authority had failed to give a reason in compliance with the circular, such fact would constitute an affirmative defense to eviction with the burden being upon the defendant to establish the lack of compliance.

■■ If there is in this record a disputed question of fact concerning compliance with the HUD circular, plaintiff was not entitled to a summary judgment and no constitutional questions are reached. ch. 110, par. 57(3), Ill. Rev. Stat. 1967.

■■ There is no question that the HUD circular, even giving it the minimum effect delineated by plaintiff, modified the original relationship between the landlord and tenant as to the provision for "Remedies" hereinbefore set forth. The failure to follow the circular was set forth as a defense to the motion for summary judgment, albeit in terms of conclusions of law.

Plaintiff, apparently realizing that the defendant's affidavit is a direct contradiction of Thomas Middleton's affidavit that he had a conference with her on December 12, 1968, seeks to build its case upon alleged inconsistencies and deficiencies in defendant's affidavit.

■■ We hold that defendant's affidavit raised a substantial question as to the material fact of whether she was advised of plaintiff's intent to evict and the reasons therefor prior to receiving written notice of January 7, 1969, hence summary judgment is not authorized.

The cause is reversed and remanded with directions to the trial court

to set aside the judgment for plaintiff, to grant defendant reasonable time to answer the complaint, and grant both parties leave to file such additional motions and pleadings as they deem appropriate.

Reversed and remanded with directions.

SMITH, P. J., and CRAVEN, J., concur.